AMERICAN SURETY CO. OF NEW YORK, Petitioner, *v.* SUPE-RIOR COURT OF PUERTO RICO, SAN JUAN PART, HÉCTOR RUIZ SOMOHANO, JUDGE, Respondent; SECRETARY OF THE TREASURY and MARYLAND CASUALTY CO., Interveners.

No. O-69-16.  Decided June 18, 1969.

*Castro & Castro* for petitioner. *Rivera Zayas, Rivera Cestero & Rúa* for Maryland Casualty Company. *J..F. Rodríguez Rivera, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for the Secretary of the Treasury.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Petitioner, American Surety Company of New York, as assignee of the sums owed, on account of work done by Inter American Builders, Inc., for the construction of Dos Pinos Development and a multipurpose building in Hato Rey, filed, on April 26, 1962, an action for the recovery of money against, among others, the Teachers' Association of Puerto Rico, owner of the works, and the contractor enterprises Southern Builders, Inc., Constructora de las Antillas, Inc., and its two affiliates, The Williams Co. and Constructora Dos Pinos, Inc. Inter American Builders, Inc., had subcontracted part of the construction of both works. Four years later, on October 10, 1966, the trial court affirmed, in all its parts, an award rendered on June 1, 1965 by the arbitrators appointed to take cognizance of the different claims brought

in the action, as supplemented by the reports of September 16, 1965, March 29, 1966, and May 2, 1966.

By virtue of the aforementioned award it was established that the Teachers' Association of Puerto Rico owed, from the contractual price, the total sum of $115,838.67, and that the subcontractor enterprises were bound to pay $78,093.82 to the American Surety Company of New York, as assignee of the subcontractor Inter American Builders, Inc. On June 8, 1967 the Teachers' Association deposited the indicated sum "without prejudice of the right which the Commonwealth may have over this sum . . . ." It refers to three withholding orders rendered on July 8, 1965, to secure the effectiveness of judgment, in claims filed for the collection of income taxes, by which said entity was ordered to abstain from transferring, delivering or paying $8,000 to The Williams Co., Inc., $4,800 to Constructora de las Antillas, Inc., and $70,386.49 to Southern Builders, Inc., from the monies which could correspond to them by virtue of the arbitrator's award.

On June 14, 1967, the American Surety Co. of New York requested by means of a motion the delivery of the sum of $78,093.82, balance in its favor, according to the award, to which the Commonwealth objected on the ground of an alleged preferred right derived from the withholding orders.

By means of an order of January 3, 1969, the trial court, applying provisions related to the concurrence and preference of credits, maintained that the State's right had preference,[1] and denied the withdrawal requested. It ignored the crucial

---

[1] Therefor the court determined that both credits—that of the American Surety Co., which it classified as a materialmen and operator credit; that of the Commonwealth, for *income* taxes—do not have the special preference established in §§ 1822, 1823, and 1824 of the Civil Code, 31 L.P.R.A. §§ 5192, 5193, and 5194; and that because that of the State was prior—July 8, 1965, date of the issuance of the withholding orders—to that of the insurer company—which was deemed to be of the date on which the court approved the arbitration award, October 10, 1966—had preference as to the payment.

issue as to the nature of the act exercised by the American Surety Co. of New York pursuant to the provisions of § 1489 of the Civil Code, 31 L.P.R.A. § 4130. Upon doing so the trial court erred.

■■ 1. As an exception to the cardinal principle of the right of obligations on the effects of contracts—only between the executing parties and their heirs, § 1209 of the Civil Code, 31 L.P.R.A. § 3374—in the cited § 1489 *supra*,[2] it is consecrated that the workers and materialmen of a work agreed upon for a lump sum by a contractor have action against the owner for the amount the latter may owe the former when the action is brought. It is advisable to note immediately that it does not involve the action of an eminently subrogate nature which § 1064 of the Civil Code, 31 L.P.R.A. § 3028, recognizes to all creditors, and which by its own terms, presupposes the excussion of the debtor's property.[3] Public policy considerations—to propitiate the prompt payment to those who furnish their labor and materials in another's work—and moral considerations—to avoid the enrichment of the owner or contractor by means of fraud or conspiracy—provide the justification of this action. *C. Armstrong e Hijos v. Díaz*, 95 P.R.R. 800, 805 (1968).[4]

■ Manresa, in his commentary about § 1597 of the Spanish Civil Code, which corresponds to § 1489 of the Puerto

---

[2] "Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought."

[3] "Creditors, *after having attached the property* of which the debtor may be in possession, in order to collect all that is due them, may exercise all the rights and actions of the latter for the same purpose, excepting those inherent in his person. . . ."

Manresa states that it cannot be understood that § 1597 (1489 of Puerto Rico) is a mere "idle and careless reproduction" of § 1111 (1064 of Puerto Rico). X *Comentarios al Código Civil Español* 934 (5th ed. 1950).

[4] Just for curiosity note that in this case the Teachers' Association was also owner of the works and that it involved a claim of one of the contractor's materialmen.

Rican, states that "*a direct action*" is granted against the owner only for the amount which he may owe when the action is brought. However, he recognizes that laborers or materialmen have not been granted any privilege whatsoever, and that the action is subject to the vicissitudes which the contractor may make concerning the disposal of his credit. X *Comentarios al Código Civil Español* 934–935 (5th ed. 1950). The Spanish doctrine is unanimous in describing the action which we are discussing as direct. XXIV Scaevola, *Código Civil* 136–150 (1915 ed.) ; IV-2 Puig Peña, *Tratado de Derecho Civil Español* 304; III Valverde, *Tratado de Derecho Civil Español* 599–600 (4th ed. 1937) ; II De Diego, *Instituciones de Derecho Civil Español* 326; II Santamaría, *Comentarios al Código Civil* 641; Traviesas, *El Contrato de Arrendamiento*, VI *Rev. Derecho Privado* 44; Bonet Ramón, *Código Civil Comentado* 1270 (Aguilar ed. 1962). And the French—from whose legislation the Spanish principle, even though limited to laborers' claims, arose—declares itself in the same sense. V Aubry and Rau, *Droit Civil Francais* 420 (6th ed.). 4 Colin and Capitant, *Curso Elemental de Derecho Civil* 504–505 (Reus ed. 1955) ; II-2 Josserand, *Derecho Civil* 233; XI Planiol and Ripert, *Tratado Práctico de Derecho Civil Francés* 213; XXVI Laurent, *Principios de Derecho Civil Francés* 95 *et seq.;* III Ripert and Boulanger, *Traité de Droit Civil* 684.

This direct nature of the action produces the important effect of deducting the amount claimed by the laborer or materialman from the claims of other creditors of the contractor, since from the very moment the claim is made to the owner, the latter becomes the debtor of the contractor's laborers and materialmen. Scaevola, *op. cit.*, at 138, states in summarizing the French case law on that particular ". . . from the time on which action is brought against the owner by the laborers, he becomes the latter's debtor, ceasing to be the contractor's debtor, up to the point that the particular

creditors of the contractor shall not participate with the operators in the sum owed by the owner," and equalizes the position of the materialman to that of a builder in good faith in accession cases. In considering the contractor's bankruptcy proceeding, Manresa points out the same thing, *op. cit.*, at 935, when he says that "If before said declaration those who furnished their labor or material in the work had already brought action against the owner, this credit will not go to the mass, because from the time of the claim it should be considered that the owner owes to his claimants and not to the contractor."[5]

Applying the principles set forth to the facts which we are considering, we are constrained to conclude that petitioner became the direct creditor of the owner of the works from the very moment when it filed its judicial claim on April 26, 1962, and that its credit is not subject to the risks of the contractor's responsibilities for other reasons. Since the indicated date the Teachers' Association became the debtor of the American Surety Co. of New York. It is not a question of a situation where it is necessary to determine as to the preference of credits in relation to the same debtor. Therefore, the American Surety Co. of New York was entitled to collect on April 26, 1962 the amounts which were owed to it by the contractor company and its subsidiaries and affiliates up to the amount which the owner of the works owed them as of that date.

We could dispose of this petition with the foregoing. However, certain explanations are in order for the final adequate disposal of the controversy between the parties in due time. We have examined the arbitration award and from the same it appears that *under the terms of the construction contracts*, the Teachers' Association was bound to pay to the contractor, Southern Builders, Inc., and its subsidiaries the

---

[5] If a like solution be attained in the application of the Federal Bankruptcy law, *quaere.*

total sum of $91,137.26,[6] and that the latter owed $63,051.21 to the American Surety Co.[7] The interest granted in the award cannot be considered for the purpose of fixing the sums which the owner of the works owed to the contractors and to the subcontractor's assignee.[8]

The order entered by the Superior Court, San Juan Part, on January 3, 1969, will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

[6] (A) Multipurpose building project
| | | |
|---|---|---|
| 1. Balance owed to Southern Builders, Inc. | | $50,391.73 |
| (B) Dos Pinos Development Project | | |
| 1. Balance owed to The Williams Co. | | 35,764.87 |
| 2. " " " Constructora Dos Pinos, Inc. | | 8,118.36 |
| 3. " " " Constructora Antillas | | (3,137.70) |
| Total: | | $91,137.26 |

[7] (A) Multipurpose building project
| | | |
|---|---|---|
| 1. Balance owed by Southern Builders | | $ 9,312.96 |
| (B) Dos Pinos Development Project | | |
| 1. Balance owed by Constructora Antillas | | 14,415.66 |
| 2. " " " The Williams Co. | | 32,422.25 |
| 3. " " " Constructora Dos Pinos | | 6,900.34 |
| Total: | | $63,051.21 |

[8] Of course, the Teachers' Association is bound to pay legal interest on $63,051.21 to the American Surety Co. of New York from April 26, 1962 to June 8, 1967, date on which it deposited the amount of the arbitration award, for 5 years, 1 month and 12 days, that is $19,798.07.

The interest accrued until April 26, 1962 on $91,137.26, amount owed to the contractors, correspond to them, as well as those accrued on $28,086.05 from said date until the date of the deposit.